1      JS-6

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  BARBARA WESSMAN,                )  NO. CV 08-01480 SJO (FMOx)
                                    )
12            Plaintiff,            )
                                    )  **ORDER AND JUDGMENT**
13       v.                         )
                                    )
14  PROVIDENT LIFE AND ACCIDENT     )
    INSURANCE COMPANY, et al.,      )
15                                  )
              Defendants.           )
16                                  )
                                    )
17  _____     )

18       The instant case arises under the Employee Retirement Income Security Act of 1974

19  ("ERISA").  The Court found this matter suitable for disposition without oral argument and vacated

20  the trial date set for February 3, 2009.  *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95

21  (9th Cir. 1999).  For the following reasons, the Court enters judgment in Defendants' favor.

22  I.    BACKGROUND

23       Plaintiff Barbara Wessman worked for 12 years as a Claims Administrator for PacifiCare

24  Health Systems Incorporated ("PacifiCare"), until she ceased work in November 2001 due to

25  injuries to her arms, knees, back and right shoulder.  (Administrative Record ("AR") 359, 726.)

26       While Wessman worked at PacifiCare, she participated in the PacifiCare Employee Benefit

27  Plan (the "Plan").  (AR 4098-4154.)  Under the Long Term Disability ("LTD") portion of the Plan,

28  Wessman could obtain total disability benefits equal to 60% of her salary, up to a maximum of

1   $2500, after the 180-day elimination period and until age 65.  (AR 4104, 4111-4114.)  The Plan

2   provides LTD benefits to employees who are totally disabled.  The Plan defines one as totally

3   disabled during the first 24 months they receive benefits if they: "(1) are unable to perform the

4   important duties of their own occupation because of an injury or sickness; (2) are not engaged in

5   any other gainful occupation; and (3) are receiving a physician's care."  (AR 4104, 4109.)

6   "Important Duties" are defined as "substantial and material duties normally required in the

7   performance of the Covered Person's Own Occupation or any other occupation for which he or

8   she is or may become suited by education, training, or experience."  (AR 4109.)  "Own

9   Occupation" is defined as "the occupation you are routinely performing immediately prior to the

10  date of disability."  (AR 4109.)  After 24 months, the Plan defines one as totally disabled if they:

11  "(1) are unable to work at all in any gainful occupation for which they are or may become suited

12  by education, training or experience; and (2) are receiving a physician's care."  (AR 4109.)  The

13  Plan provides that Provident Life and Accident Insurance Company ("Provident"), the insurer and

14  Plan administrator, has "full, exclusive and discretionary authority" to carry out all actions involving

15  claims procedures, to grant and/or deny benefits, and to construe all issues of eligibility.  (AR

16  4123.)

17      In October 2001, Wessman suffered a back injury, and she ceased work in

18  November 2001.  (AR 130.)  Wessman began treatment with Dr. Jay Vogel, an orthopedic

19  surgeon, who noted a number of orthopedic problems including acute musculoligamentous injury

20  (strain) to her cervical and thoracic spine, medial epicondylitis (commonly known as "golfer's

21  elbow") in both her elbows, lateral epicondylitis (commonly known as "tennis elbow") in her left

22  elbow, chondromalacia (also known as "runner's knee") in both her knee caps, a lateral meniscus

23  tear in her left knee, and possible lumbar disc syndrome.  (AR 80, 108, 113, 138.)[1]  Wessman also

24  _____

25      [1]  The Court is aware that Vogel has been arrested and arraigned on criminal charges
    alleging workers' compensation fraud.  *See* S.I.U. Update (S. Cal. Risk Mgmt. Assoc.) Aug. 2008,
26  at 4, *available at* http://www.scrma.com/news/siu/SIU-2008-08.pdf.  The Court is also aware that
    a separate civil action has been filed against Vogel in the Superior Court of Orange County
27  alleging insurance fraud.  (No. 30-2008-00103239-CU-FR-CXC).  This information does not
    appear to have been before Provident at the time it made its decision to deny Wessman's benefits,
28  nor does this information appear to have in any way influenced Provident's decision to deny

1  saw Dr. Edward Komberg for physical therapy treatments.  (AR 92-98, 728.)  In May 2002,

2  Wessman applied for and received short-term disability ("STD") benefits from Provident.

3        After Wessman's STD benefits expired in May 2002, Provident conducted a medical and

4  vocational assessment to determine whether she was eligible for long-term disability ("LTD")

5  benefits. (AR 122, 1749.)  Vogel certified to Provident, as he had in her STD benefits claim, that

6  Wessman was temporarily totally disabled for one month, listing the same diagnoses as in her

7  STD claim. (AR 87.)  For Provident's medical review of Wessman's LTD claim, Kathryn Gregory,

8  a nurse in Provident's certified rehabilitation specialist department, reviewed Wessman's claim and

9  reported that "[Wessman]'s prognosis appears to be poor due to multiple joint involvement and

10  the failure to improve with conservative care."  (AR 83-86.)  She referred the claim for an

11  orthopedic review, which was conducted by Dr. Lance Matheny, an orthopedic surgeon, in

12  June 2002. (AR 81.)  He concluded that based on Wessman's spinal, shoulder and knee injuries,

13  "[g]eneral restrictions and limitations would include repetitive bending or twisting, extreme or

14  unusual positioning, more than light lifting, and frequent changes of position"; "highly repetitive

15  activities, especially those requiring repetitive pronation/supination and prolonged or strenuous

16  grip activities"; and "prolonged standing or walking, as well as squatting, crawling, kneeling and

17  ladder climbing." (AR 81.)  Matheny went on to state that "[h]ow these restrictions and limitations

18  might relate to work would be an issue for vocational rehabilitation to assess.  From an orthopedic

19  standpoint, the assessment of total impairment appears overly restrictive in relation to the clinical

20  information reviewed."  (AR 81.)

21        For Provident's vocational review of Wessman's LTD claim, Wessman's supervisor,

22  Elva Alvarado, filled out a "Job Analysis" of Wessman's position, listing her job requirements as

23  follows.  In an eight hour workday, Wessman's position required sitting and typing six hours per

24  day, 2.5 hours at a time; using the phone for three hours per day, 30 minutes at a time; standing

25  for one hour per day, 15 minutes at a time; walking for one hour per day, 15 minutes at a time; and

26

27  Wessman's benefits. As such, the Court will not consider these allegations in determining whether
   Provident acted appropriately when it denied Wessman's claim for LTD benefits.  Nonetheless,
28  these matters should have been brought to the Court's attention.

1   repetitive hand motions and grasping six times per hour.  (AR 71-72.)  Her position also required

2   lifting client files, frequently for files that weigh one pound, and occasionally for files that weigh five

3   to 30 pounds, as well as carrying one to five pound files a distance of three feet, one time per day.

4   (AR 71.)  In addition to Alvarado's statement about lifting requirements, Wessman's LTD claim file

5   included Vogel's records stating that Wessman injured herself at work when she was required to

6   lift and unpack approximately 20 boxes over a period of two days.  (AR 130.)  According to a co-

7   worker, these boxes weighed an average of 10 to 15 pounds.  (AR 891.)  Wessman's job did not

8   require reaching, twisting, squatting, kneeling, crawling, bending, stooping, pushing, pulling, or

9   climbing.  (AR 71-72.)

10       Next, Provident's Chris Nunley performed a "Vocational Rehabilitation Initial Review" of

11   Matheny's restrictions and limitations as compared to Alvarado's Job Analysis.  (AR 68.)  To

12   assess the lifting requirement, Nunley spoke with Alvarado, who explained that as part of her job,

13   Wessman had to retrieve three-inch binders or files approximately once per day and "estimated

14   that they would weigh 30 pounds."  (AR 67.)  Alvarado also told her that "Wessman was not

15   required to be seated and she could change positions as needed, however, she did work at the

16   computer for the majority of the time."  (AR 67.)  Nunley's review concluded that "the only job

17   requirement outside of the insured's restrictions and limitations appears to be lifting of 30 pounds

18   occasionally."  (AR 68.)  She further stated that "based upon the information in the file and the

19   employer contact it would appear that Ms. Wessman would be capable of performing her job as

20   an Administrator given the restrictions and limitations provided by Dr. Matheny."  (AR 67.)

21       Once Nunley reached this conclusion, Matheny called Vogel to determine "[w]hat

22   specifically would prevent [Wessman] from returning to sedentary work?"  (AR 63.)  After three

23   unsuccessful attempts to contact Vogel (AR 63-64), Provident deemed its review of Wessman's

24   LTD claim complete (AR 61), and denied Wessman's claim.  (AR 57.)  In the denial letter,

25   Provident explained that it compared "the restrictions that are supported by the medical

26   information in our file to the physical requirements of your job," and concluded that Wessman

27   could perform the "Important Duties" of her "Own Occupation."  (AR 57-58.) )  The letter stated

28   the lifting requirements of Wessman's job as "lifting 1 lb. frequently, 5 lbs. occasionally," but did

1  not mention lifting 30 pounds.  (AR 57.)  The letter stated that Provident reviewed Vogel's records

2  but Dr. Komberg's records "were totally illegible and we were unable to decipher them."  (AR 58.)

3  Provident further stated that "Dr. Vogel indicated that you were totally disabled from any work at

4  all," and that "[o]ur physicians made several attempts to contact Dr. Vogel to discuss what

5  specifically would prevent you from performing sedentary work.  To date, our physician has not

6  received a call back."  (AR 58.)  Lastly, the letter informed Wessman that if she appealed, "[i]n the

7  case of a claim denied on the grounds of a medical judgment, we will consult with a health

8  professional with appropriate training and experience."  (AR 59.)

9         After Wessman received the denial letter, she contacted Provident multiple times to find out

10  what they needed from her or her doctors.  (AR 52-53, 55.)  She also had Vogel's nurse call

11  Provident to find out what was needed.  Provident responded:

12         I am not aware of what information we don't have.  Ms. Wessman would need to
       request specific information from you in order to submit with her appeal. . . .  The
13       question that we would like to clarify is "What specifically would prevent
       Ms. Wessman from returning to a sedentary occupation?"  The information that we
14       currently have does not support her inability to work in her sedentary job. . . .
       Please request Dr. Vogel elaborate on this question.

15
16  (AR 51.)  Wessman then sent her appeal to Provident, in which she stated:

17         My physicians, Dr. Komberg and Dr. Vogel, have sent you information to certify my
       disability.  They have submitted my M.R.I. reports showing injuries to my Lumbar
       Spine, Rt Shoulder and left knee.  I am unable to work do [sic] to my medical
18       condition. . . .  When I spoke to you, you said that your medical director,
       Dr. Thomas, needed additional information.  I spoke to my doctors and they said
19       they would provide any additional information that your company needs to
       substantiate my medical disability.  Please request the additional information from
20       Dr. Komberg and Dr. Vogel in writing.

21  (AR 45-46.)  Provident responded that "[i]f additional information is needed, it will be requested

22  and you will be notified of the request in writing.  You will be given a reasonable period of time,

23  at least 45 days, to provide this information to us."  (AR 44.)

24         Provident then referred Wessman's appeal to David Frank, a Provident employee and

25  physical therapist, for review.  (AR 39.)  Frank indicated there were no unavailable records of

26  treatment, evaluation or assessment, that if obtained would provide him with a better

27  understanding of Wessman's status. (AR 42.) Frank concluded that the information in Wessman's

28  file "would appear to support . . . some restriction in repetitive cervical and trunk motions, some

1    lifting restrictions and the need for postural changes on a frequent basis"; "restrictions of repetitive

2    forearm activity"; and "restrictions of prolonged standing and walking with limited stair climbing,

3    squatting and kneeling." (AR 42.) Frank noted that the "restrictions would appear to be ongoing

4    due to degenerative changes," and forwarded the file for "a new orthopedic physician review" to

5    determine whether "the clinical data reference any unavailable records of treatment, evaluation

6    or assessment, that if obtained would provide . . . a better understanding of the claimant's clinical

7    status" and whether "the available clinical data support the restrictions and limitations of the

8    attending physician." (AR 42.)

9           Instead of an orthopedic physician, Dr. Brian Brock, a radiologist, reviewed Wessman's file

10   and stated that:

11            [Wessman] described constant pains of the cervical, thoracic and lumbosacral
              spines, both elbows and both knees exacerbated by activities. [Wessman] stated
12            the bilateral pains were exacerbated by lifting objects of more than five pounds and
              the stiffness of both knees were exacerbated by sitting for more than 20 minutes
13            and attempting to rise from a seated position.

14   (AR 34.) Brock concluded that "there is not enough information to indicate specific restrictions and

15   limitations necessary for the cervical spine, however protracted or more often than occasional

16   extreme ranges of position of the cervical spine should probably be avoided," as should "[m]ore

17   than occasional bending and twisting or protracted fixed positioning of the thoracic lumbar spine,"

18   and "frequent or continuous standing/walking, . . . squatting, crawling, kneeling, ladder climbing,

19   stair climbing or fixed continuous full flexion of the knees." (AR 36.) Nunley then performed a

20   second vocational review and concluded, as she did in her initial review, that Wessman "would

21   be capable of performing her job as an Administrator given the restrictions and limitations provided

22   by Dr. Brock. (AR 32.) Based on this conclusion, Provident denied Wessman's appeal. (AR 26.)

23          Wessman brought suit against Provident in federal district court, where the judge found that

24   Provident did not abuse its discretion in denying Wessman's LTD claim and entered judgment in

25   Provident's favor. (AR 604.) Wessman appealed to the Ninth Circuit Court of Appeals, arguing

26   that the discretionary language of the Plan was invalid, and the Ninth Circuit vacated the judgment

27   and remanded the case to determine whether the discretionary clause was valid. *Faragi v.*

28   *Provident Life & Accident Ins. Co.*, 161 Fed. Appx. 649, 651 (9th Cir. 2005). Before the parties

1   briefed the issue to the district court, Wessman dismissed the action and elected to have her claim

2   reassessed by Provident pursuant to the California Settlement Agreement ("CSA"), Provident's

3   agreement with the California Department of Insurance ("DOI") to reassess claims denied during

4   a certain time period.  (AR 765-767; CSA, filed as Kantor Decl. Ex. A.)  Under the CSA, claimants

5   denied benefits may have their claims reevaluated by Provident, and if they are denied, examined

6   by an independent reviewer approved by DOI.  (CSA § III ¶¶ A, C.)  In reviewing Wessman's

7   denial, the CSA required Provident to "give significant weight to an attending physician's opinion.

8   . . . In order for an attending physician's opinion to be rejected, the claim file must include specific

9   reasons why the opinion is not well supported by medically acceptable clinical or diagnostic

10  standards and is inconsistent with other substantial evidence in the record."  (CSA § III ¶ D.)

11          Dr. Thomas E. Moses, an orthopedic surgeon, conducted the CSA medical review, and

12  concluded that a number of restrictions were appropriate, including "limiting overhead use, sitting

13  with the ability for postural changes as needed and alternating with standing/walking, no repetitive

14  bending or twisting"; "limited repetitive activities and repetitive pronation and supination, as well

15  as prolonged strenuous gripping"; and no "excessive overhead use of the right arm."  (AR 309.)

16  Moses stated that these restrictions "are probably going to be permanent."  (AR 309.)

17          Provident then had Dorothy C. Edwards, Senior Vocational Rehabilitation Consultant,

18  conduct a vocational analysis.  (AR 350.)  Edwards received only Moses' report, Alvarado's Job

19  Analysis, and Nunley's "Vocational Rehabilitation Follow-up Message".  (AR 350).  Based on these

20  materials, Edwards found that Wessman could perform her job requirements.  (AR 351.)  In

21  response to Moses' finding that Wessman was restricted to "sitting with the ability for postural

22  changes as needed and alternating with standing/walking" (AR 309), Edwards noted that

23  Wessman "had an ergonomic work station which allowed her to alternate sitting with standing

24  when using the computer."  (AR 351.)  However, as Alvarado explained to Provident in June 2002,

25  "the [keyboard] tray could be raised or lowered but the desk itself could not."  (AR 67.)  As for the

26  lifting restrictions the prior reviewing physicians had recommended, Edwards stated that "[t]he 30

27  pound estimate is greatly exaggerated.  A box of 10 reams of 8.5 x 11 inch, 20 pound paper, each

28

1 | ream measuring two inches in height, weighs 40 pounds.  At best, a paper-filled three-inch binder

2 | would weigh no more than 10 pounds."  (AR 351.)

3 | During this time, Wessman informed Provident that in addition to orthopedic problems, she

4 | also suffered from pulmonary problems, which she alleged were due to "exposure to certain

5 | chemicals at work." (AR 579-580, 501-502.) Provident obtained Wessman's medical records from

6 | the physician Wessman cited as having supportive information.  (AR 508-573.)

7 | Provident also requested Wessman's workers' compensation files from her.  In these files

8 | were two 2002 medical reports by orthopedic examiner Dr. Ronald Levin, in which he stated that

9 | Wessman had no restrictions and "is able to return to her usual and customary occupation . . .

10 | without apparent problems." (AR 2335.)  The workers' compensation files also contained a 2004

11 | report by medical examiner Dr. Jonathan Green which concluded that her allergy symptoms were

12 | controlled, she had no active asthma, and no work restrictions.  (AR 2322-23.)  In addition, the

13 | files contained Wessman's workers' compensation deposition testimony that on a number of

14 | occasions over the year prior to her disability, she had been required to pack and move substantial

15 | amounts of heavy items; she recalled three specific instances in which she was required to move

16 | 10, 20, and 45 boxes.  (AR 4068-69, 4078.)  Lastly, the files contained the workers' compensation

17 | administrative law judge's 2006 ruling that Wessman did not establish that she was injured in

18 | October 2001 and that her injuries were not work-related, as well as the Social Security

19 | Administration's 2003 decision denying her benefits because she was not disabled.  (AR 2526-38,

20 | 2557-90, 2519.)

21 | Provident then referred the claim to Dr. Valencia Clay, a board-certified internist, for review.

22 | She found that the records provided no support for any restrictions and limitations due to asthma

23 | or allergic rhinitis, except that Wessman should avoid repeated exposure to smoke, dust and

24 | fumes.  (AR 492-493.)  She also concluded that despite Wessman's assertion that her pain

25 | medications impaired her ability to work, there were no adverse side effects from these

26 | medications.  (AR 485.)  Based on the conclusions of Moses, Edwards, and Clay, Provident

27 | denied Wessman's claim under the CSA.  (AR 469-470, 474.)  It explained in its denial letter that

28 | Wessman was not totally disabled, defining total disability as "disability that renders one unable

1 | to perform with reasonable continuity the substantial and material acts necessary to pursue his

2 | or her usual occupation in the usual and customary way." (AR 475.)

3 |      Wessman then requested an independent review of the denial.  (AR 461.)  Two

4 | independent reviews were performed, one by an attorney who works in health insurance law and

5 | the other by an orthopedic surgeon.  (AR 246-263.)  The attorney noted that no deference was

6 | given to Provident's denial and that the weight of the evidence established that Wessman was not

7 | totally disabled. (AR 260.)  The orthopedic surgeon found that "there is simply nothing to suggest

8 | that any of these diagnoses would provide some lingering limitation from performance of the job

9 | as outlined in the job analysis.  I would definitely support the prior reassessment decision." (AR

10 | 253.)

11 |      Kantor brought suit challenging the CSA reassessment in March 2008.  She argues that:

12 | (1) Provident failed to give significant weight to Wessman's treating physicians; (2) Provident

13 | improperly disregarded Wessman's self-reported symptoms such as pain; (3) Provident failed to

14 | consider the totality of the evidence, and instead relied on a selective review of it; (4) Provident

15 | failed to consult the appropriate medical expert on appeal; (5) Provident's decision was not based

16 | on substantial evidence of Wessman's work capacity; and (6) Provident failed to conduct an

17 | adequate investigation of Wessman's work capacity.

18 | II.     DISCUSSION

19 |      A.     Standard of Review

20 |      In a civil ERISA action, courts use an abuse of discretion standard to review a plan

21 | administrator's denial of benefits when a plan grants the plan administrator discretion "to

22 | determine eligibility for benefits or to construe the terms of the plan."  *Abatie*, 458 F.3d at 963.

23 | Under an abuse of discretion standard, "courts must consider factors such as whether the benefits

24 | decision conflicts with the plain language of the plan, whether the fiduciary failed to provide an

25 | explanation of its decision, and whether the fiduciary made clearly erroneous findings of fact in

26 | making the benefits determination."  *Ratkovic v. Northrop Grumman Corp. Employee Welfare*

27 | *Benefit Plan*, No. 06-08255, 2009 U.S. Dist. LEXIS 13862, at * (C.D. Cal. Feb. 20, 2009) (citing

28 | *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 553 (9th Cir. 1995); *Jebian v. Hewlitt-Packard*

1    *Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1108 (9th Cir. 2003); *Boyd v. Bert*

2    *Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005).

3          In the instant case, the Plan explicitly states that Provident has "full, exclusive and

4    discretionary authority" to carry out all actions involving claims procedures, to grant and/or deny

5    benefits, and to construe all issues for eligibility.  (AR 4123.)  Thus, an abuse of discretion

6    standard applies to the Court's review of the plan administrator's denial of Wessman's LTD claim.

7     Wessman argues that because she is not challenging Provident's initial denial of her appeal under

8    the Plan, but rather its decision under the CSA, which lacks discretionary language, the Court

9    should review her claim de novo.  However, the CSA simply provides an opportunity to have

10   Provident's denial under the Plan reviewed again by Provident, then by an independent reviewer.

11   (CSA § III ¶ C.)   After these reviews, Provident "shall make the final decision in the CSA

12   Reassessment as to whether the original decision is upheld, modified, or reversed."  (CSA § III

13   ¶ C.)  Thus, the review under the CSA is still a review of Provident's decision under the Plan,

14   making abuse of discretion the appropriate standard of review.

15         Wessman also argues that because the reassessment utilizes a de novo standard of

16   review, "it is difficult to imagine how this Court could review Provident or [the independent

17   reviewer]'s decision for abuse of discretion."  (Pl.'s Responsive Br. 4.)  However, when a claimant

18   appeals her initial denial, the plan administrator reviews the claim de novo; if he upholds the denial

19   and the claimant files suit, a court reviews the decision for abuse of discretion.  *Abatie*, 458 F.3d

20   at 963.  The Court fails to see how the reassessment's de novo review differs from the de novo

21   review by the plan administrator on appeal so as to affect a court's ability to review for abuse of

22   discretion.  Thus, the Court finds that abuse of discretion is the proper standard of review for a

23   challenge to Provident's CSA reassessment decision.

24         B.       Plain Language of the Plan, Explanation of Decision, and Findings of Fact

25         The Plan defines one as totally disabled during the first 24 months they receive benefits if

26   they: "(1) are unable to perform the important duties of their own occupation because of an injury

27   or sickness; (2) are not engaged in any other gainful occupation; and (3) are receiving a

28   physician's care."  (AR 4104, 4109.)  "Important Duties" are defined as "substantial and material

1   duties normally required in the performance of the Covered Person's Own Occupation or any other

2   occupation for which he or she is or may become suited by education, training, or experience."

3   (AR 4109.)  After 24 months, the Plan defines one as totally disabled if they: "(1) are unable to

4   work at all in any gainful occupation for which they are or may become suited by education,

5   training or experience; and (2) are receiving a physician's care." (AR 4109.) Provident states that

6   in its CSA reassessment, it defined total disability as "disability that renders one unable to perform

7   with reasonable continuity the substantial and material acts necessary to pursue his or her usual

8   occupation in the usual and customary way."[2]  (AR 475.)

9           Provident's reviewing doctors did not disagree with Wessman's treating physician, Vogel,

10   as to her injuries.  In addition, while Vogel did not specify any particular restrictions based on

11   Wessman's injuries, the doctors that reviewed her claim for the initial denial, the appeal, and the

12   reassessment, all found that based on the injuries Vogel and the other doctors diagnosed, certain

13   restrictions were appropriate. Each doctor recommended very similar restrictions. Therefore, the

14   main dispute between the parties is not about Wessman's injuries or the physician-recommended

15   restrictions. Instead, it is over whether these restrictions, combined with her job requirements, put

16   her within the definition of "totally disabled."

17           Wessman argues that because she has been required to move heavy boxes during her

18   employment, and the reviewing doctors agree that she should lift heavy boxes only occasionally,

19   she is not able to perform her occupation and is thus totally disabled.  However, under even the

20   least stringent of the total disability definitions employed by Provident, Wessman must be unable

21   to perform the "substantial and material" duties of her position. (AR 4109.) Although Wessman's

22   workers' compensation deposition testimony establishes that she has been required to move

23   heavy boxes several times during the course of her employment, she notes only four such

24   instances in the 12 years she has worked for PacifiCare.  Moreover, Alvarado clearly stated that

25

26           [2]   Provident does not explain why it employed a definition of total disability upon

27   reassessment different than those under the Plan.  However, this definition is less stringent than
    the "any occupation" definition under the Plan, and thus Wessman was not, nor does she claim

28   to be, prejudiced in any way by the use of this definition.

1 the lifting requirements of her position require moving one file per day.  While Wessman argues

2 that boxes of files may weigh more than 30 pounds, an individual file does not.  In addition,

3 Alvarado's description of Wessman's job requirements makes clear that the "substantial and

4 material duties normally required in the performance" of her job do not require "repetitive bending

5 or twisting, extreme or unusual positioning, more than light lifting, and frequent changes of

6 position"; "highly repetitive activities, especially those requiring repetitive pronation/supination and

7 prolonged or strenuous grip activities"; or "prolonged standing or walking, as well as squatting,

8 crawling, kneeling and ladder climbing"–the restrictions recommended by the reviewing

9 physicians.  (AR 81, 4109.)

10        Accordingly, Provident's decision to deny Wessman's LTD claim was supported by

11 substantial evidence, its findings of fact were not erroneous, and its decision does not conflict with

12 the plain language of the Plan.  In addition, Provident fully explained its decisions and the bases

13 for them in each of its denial letters.  Thus, based on these factors, Provident did not abuse its

14 discretion in denying Wessman's claim, and in affirming this decision both on appeal and during

15 the CSA reassessment.

16        C.     The CSA's "Significant Weight" Requirement

17        Wessman argues that during its reassessment Provident violated the CSA's requirement

18 that it "give significant weight to an attending physician's opinion."  (CSA § III ¶ D.)  Here,

19 Provident largely agreed with Vogel's opinion regarding Wessman's diagnoses.  As explained

20 above, however, Vogel did not provide Wessman or Provident with specific restrictions or

21 limitations based on her injuries.  Although the records he submitted to Provident state that she

22 was temporarily totally disabled for a number of consecutive one-month periods, this opinion does

23 not necessitate a finding that she is disabled under the Plan's definition of total disability.

24 Provident's efforts to contact Vogel for further explanation of how her physical injuries impaired

25 her ability to perform her job requirements were unsuccessful.  As Provident did give significant

26 weight to Vogel's diagnoses, and based its decision on the restrictions recommended by other

27 physicians based on these diagnoses, Provident did not abuse its discretion in concluding that

28

1  these restrictions did not render Wessman incapable of performing the substantial duties of her

2  job.

3         D.      Self-Reported Conditions

4         The CSA requires Provident to disregard "self reported condition" clauses in its contracts.

5  (CSA § IV ¶ C.)  These clauses provided that certain conditions, such as pain, were "self-reported"

6  rather than objective, while the plans accepted only objective test results to support findings of

7  disability.  (CSA § IV ¶ C.)  Although the Plan does not contain such a clause, Wessman argues

8  that Provident improperly ignored her subjective reports of pain.  (Pl.'s Trial Br. 21.)  However,

9  Provident did not ignore Wessman's pain; it considered these symptoms in conjunction with all of

10  the other evidence, and concluded that Wessman was not totally disabled.  In doing so, it did not

11  abuse its discretion.

12         E.      Substantial Evidence

13         A plan administrator's decision is not based on substantial evidence contained in the record

14  as a whole when there has been excessive weighting of selected evidence.  *Govindarajan v. FMC*

15  *Corporation*, 932 F.2d 634, 637 (7th Cir. 1991).  A selective review of the evidence is an abuse

16  of discretion and will support a reversal of the administrator's decision, even under the arbitrary

17  and capricious standard of review.  *Id.*  Here, the Court finds that Provident did not engage in

18  excessive weighting of selected evidence, but instead made its decision based on the totality of

19  the evidence, and thus did not abuse its discretion.

20         F.      Consultation with Appropriate Medical Professional

21         Federal regulations require that "in deciding any appeal of any adverse benefit

22  determination that is based in whole or in part on a medical judgment, . . . the appropriate named

23  fiduciary shall consult with a health care professional who has appropriate training and experience

24  in the field of medicine involved in the medical judgment."  29 C.F.R. § 2560.503-1(h)(3)(iii).  In

25  addition, in its denial letter, Provident stated that "[i]n the case of a claim denied on the grounds

26  of a medical judgment, we will consult with a health professional with appropriate training and

27  experience."  (AR 59.)  Wessman relies on *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118,

28  1122-23 (9th Cir. 1998), and *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 538 (9th Cir.

1   1990), to support her contention that because Brock was not an orthopedist, Provident abused its

2   discretion in having him review her appeal.  However, in those cases, the courts found an abuse

3   of discretion where, among other reasons, none of the medical personnel who reviewed the

4   employee's claim was an expert in the relevant field.  Here, in contrast, three orthopedists

5   reviewed her claim: Matheny before the initial denial, Moses during Provident's CSA

6   reassessment, and an orthopedic surgeon during the independent review.  Moreover, the CSA

7   reassessment in which two orthopedists reviewed her claim de novo cured any error Provident

8   may have made in neglecting to use an orthopedist for the first review of Wessman's appeal.

9          For the foregoing reasons, the Court finds that Provident did not abuse its discretion in

10  affirming its denial of Wessman's LTD claim in its CSA reassessment.

11  III.    RULING

12         IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor

13  of Defendants Provident Life and Accident Insurance Company and PacifiCare Health Systems

14  Incorporated Employee Benefit Plan.

15         IT IS SO ADJUDGED.

16         March 26, 2009

17
                                                _____
18                                                        S. JAMES OTERO
                                                 UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28